UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MALONI SEYFARTH; and all others
similarly situated,

Plaintiffs,

v.

REESE LAW GROUP, P.L.C., et al.,

Defendants.

CASE NO. C09-5727BHS

ORDER DENYING
DEFENDANTS'
MOTION TO DISMISS

This matter comes before the Court on Defendants Reese Law Group P.L.C.,
Harlan M. Reese, and Jane Doe Reese, and Ford Motor Credit Company, LLC's ("Ford")
motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for
failure to state a claim upon which relief can be granted.  Dkt. 21; *see* Dkt. 24.  The Court
has considered the pleadings filed in support of and in opposition to the motion and the
remainder of the file and hereby denies Defendants' motion to dismiss for the reasons
stated herein.

## I. PROCEDURAL BACKGROUND

On November 24, 2009, Plaintiff Maloni Seyfarth ("Seyfarth") filed her complaint.
Dkt. 1.  On May 3, 2010, the Reese Defendants filed their motion to dismiss Seyfarth's
claims brought under the Washington State Consumer Protection Act, RCW 19.86, et seq.
("WCPA").  Dkt. 21.  On May 6, 2010, Ford joined in the motion to dismiss.  Dkt. 24.
On May 24, 2010, Seyfarth responded to the motion (Dkt. 25), and on May 28, 2010,
Defendants replied (Dkts. 27 and 28).  On June 2, 2010, Seyfarth filed a surreply (Dkt.

1    33) to Ford's reply to the motion, and on June 4, 2010, Ford filed a reply (Dkt. 35) to

2    Seyfarth's surrreply.

3                           **II. SEYFARTH'S COMPLAINT**

4    **A.    Factual Allegations**

5           Seyfarth is a resident of the State of Washington and resides within the jurisdiction

6    of this Court.  Dkt. 1 at 4.  Defendant Reese Law Group, P.L.C. ("Reese Law Group") is

7    a California professional law corporation and employs Defendant Harlan M. Reese ("Mr.

8    Reese"), an attorney licensed to practice law in the State of Washington.  *Id*.  Reese Law

9    Group and Mr. Reese are attorneys for Ford.  *Id*.  Jane Doe Reese is Mr. Reese's wife.  *Id*.

10   at 3-4.  This is a putative class action suit brought under the Fair Debt Collection

11   Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").  *See generally id*.  Seyfarth also

12   alleges claims under the WCPA.  *Id*.

13          The following relevant factual allegations contained in Seyfarth's complaint

14   (Dkt. 1) are taken as true in deciding Defendants' motion to dismiss:

15          Seyfarth is a consumer as defined by the FDCPA and allegedly owed a debt to

16   Ford for her purchase of a motor vehicle under a retail installment contract.  Ford

17   repossessed and sold the vehicle.  On September 27, 2001, Ford filed an action in Clark

18   County District Court to recover an alleged deficiency debt following the sale of the

19   vehicle.  *See Ford Motor Credit Company v. Seyfarth*, Clark County District Court Cause

20   No. 277118-04 ("state court action").  On December 18, 2001, Ford obtained a default

21   judgment against Seyfarth in the amount of $ 4,819.40 in the state court action and on

22   December, 2, 2003, Ford filed the judgment obtained in the state court action.

23          On November 28, 2008, January 20, 2009, April 2, 2009, and September 4, 2009,

24   Mr. Reese prepared, signed, and filed applications for garnishments and garnishment

25   writs in the state court action.  These applications were generated by computer software

26   that merges data into a pre-made form called "Application for Writ of Garnishment."

27   With regard to each garnishment writ, Mr. Reese (1) failed to redact Seyfarth's social

28

security number, (2) requested garnishment attorney fees in excess of that allowed by law, (3) represented that the garnishment writs were issued by Mr. Reese instead of a Clark County court clerk, and (4) requested recovery of past garnishment costs and fees of prior unsuccessful garnishments.

Based on these facts, Seyfarth alleges that Defendants violated the FDCPA and the WCPA.

**B.    WCPA Claim**

In her complaint, Seyfarth states that:

> All Defendants violated the Washington Consumer Prtection Act ("WCPA").
>
> Defendants Reese Law Group, P.L.C., Ford Motor Credit and Harlan M. Reese, personally and/or by and through their agents and employees, policies and procedures, have engaged in deceptive acts and practices, unfair acts and practices, and unfair methods of competition that have caused injury to the plaintiff.
>
> Defendants Reese Law Group, P.L.C., Ford Motor Credit and Harlan M. Reese have engaged in unfair and deceptive acts and practices in attempting to collect an alleged debt from plaintiff.
>
> Defendants Reese Law Group, P.L.C., Ford Motor Credit and Harlan M. Reese are each in the business of debt collection in trade or commerce.
>
> Unlawful and Unfair Debt Collections is against public interest.
>
> Defendants Reese Law Group, P.L.C., Ford Motor Credit and Harlan M. Reese's action were the direct cause of injury to plaintiff's property.
>
> [Seyfarth's] funds in excess of an amount allowed by law were seized by the defendants, based on the misrepresentation of the defendant.
>
> The violations have harmed and unless enjoined will continue to harm  the public interest by causing Plaintiff and other similarly situated to pay collection charges and attorney fees that are unfair, deceptive, unlawful, and an unfair method of competition.
>
> The Consumer Protection Act of the State of Washington requires that all collection agents and debt collectors abstain from unfair or deceptive practices or acts and unfair methods of competition.
>
> Defendant Reese Law Group, P.L.C. is a for profit corporation.
>
> Plaintiff Seyfarth suffered an injury to property since her funds were taken by unlawful garnishment and incurred attorney fees in excess of that allowed by law.
>
> The entrepreneurial acts and practices of an attorney are subject to the Consumer Protection Act, RCW 19.86 and subsequent sections.
>
> The Consumer Protection Act of the State of Washington requires that all attorneys engaging in the entrepreneurial acts and practices abstain from unfair or deceptive practices or acts and unfair methods of competition.

ORDER - 3

1
2
3
4

> Defendant[s] Reese Law Group and Harlan M. Reese personally
> and/or by and through their agents and employees, policies and procedures,
> have engaged in deceptive acts and practices, unfair acts and practices, and
> unfair methods of competition in the entrepreneurial practice of law that
> have caused injury to the plaintiffs.
>       Defendant Reese Law Group inflated its attorney fees with deceptive
> applications for garnishment.

5   Dkt. 1 at 29-31 ¶¶ 9.1 - 9.15.

6                               **III. DISCUSSION**

7   **A.    Standard for Deciding Motion to Dismiss Under Rule 12(b)(6)**

8          Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil

9   Procedure may be based on either the lack of a cognizable legal theory or the absence of

10  sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department*, 901

11  F.2d 696, 699 (9th Cir. 1990).  A court accepts the factual allegations in the complaint as

12  true for purposes of deciding the motion to dismiss. *Id*.  To survive a motion to dismiss,

13  the complaint does not require detailed factual allegations but must provide the grounds

14  for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause

15  of action. *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) "Factual

16  allegations must be enough to raise a right to relief above the speculative level, on the

17  assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*.

18  at 555-56 (internal citations omitted).  Plaintiffs must allege "enough facts to state a claim

19  to relief that is plausible on its face." *Id*. at 570.

20  **B.    Seyfarth's WCPA Claim**

21         To establish a private WCPA violation, a plaintiff must prove that the defendant's

22  act or practice: (1) was unfair or deceptive, (2) occurred in trade or commerce, (3)

23  affected the public interest, and (4) caused (5) injury to the plaintiff's business or

24  property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

25  784-85 (1986).  Trade or commerce is defined in the WCPA as "the sale of assets or

26  services, and any commerce directly or indirectly affecting the people of the state of

27
28

ORDER - 4

1    Washington."  RCW 19.86.010(2).  For purposes of the motion to dismiss, the element

2    involving "trade or commerce" is the only one at issue.  *See* Dkt. 21.

3            **1.    Entrepreneurial Aspects of the Practice of Law**

4            In *Short v. Demopolis*, 103 Wn.2d 52, 60-61 (1984), the Washington Supreme

5    Court held that legal services may fall within the WCPA's definition of trade or

6    commerce, when such services relate to the "entrepreneurial aspects" of the practice of

7    law.  The court defined these "entrepreneurial aspects" as "how the price of legal services

8    is determined, billed, and collected and the way a law firm obtains, retains, and dismisses

9    clients.  These business aspects of the legal professions are legitimate concerns of the

10   public which are properly subject to the [W]CPA."  *Id*. at 61.  On the other hand, the

11   court held that when a plaintiff's "claims are directed to the competence of and strategy

12   employed by [an attorney], they amount to allegations of negligence or malpractice and

13   are exempt from the [W]CPA."  *Id*. at 61-62.

14           Defendants argue that Seyfarth's complaint fails to state a claim under the WCPA

15   because the services performed by or on behalf of Defendants were legal services that

16   were not entrepreneurial in nature and therefore do not constitute trade or commerce

17   under the WCPA.  Dkt. 21 at 5-7.  Seyfarth maintains that Defendants' services, on which

18   she bases her claim, fit within the *Short* court's definition of entrepreneurial aspects of

19   legal practice.  Dkt. 25 at 8.  Specifically, Seyfarth alleges that Defendants acted with the

20   "purpose of increasing profits or gaining clients" and that such acts are entrepreneurial.

21   Dkt. 25 at 6-8 (*quoting Eriks v. Denver*, 118 Wn.2d 451, 824 P.2d 1207 (1992)).  In

22   support of this argument, Plaintiff alleges that

23               [i]t is the pattern and practice of the Reese Defendants to inflate their
             garnishment attorney fee in all cases where the statutory maximum is not
24           allowed by law.  Dkt. 1 at 22 ¶ 6.16.  The Reese Defendants use pre-made
             forms and word processing to generate and file thousands of garnishments
25           and collect statutory garnishment attorney fees on each of them.  Dkt. 1 at
             20-24 ¶¶ 6.1 - 6.28.  As a result, the Reese Defendants collect inflated and
26           unlawful fees thousands of times.  Dkt. 1 at 23 ¶¶ 6.24- 6.28.

27   Dkt. 25 at 7.  Moreover, Seyfarth argues that

28

> [t]he manner in which law firm is paid for its collection activities is an aspect of the entrpreneurial part of the practice of law.  The shifting of attorney's fees to the adversary consumer enables the Reese defendants to either increase its profit or reduce the cost to creditors.  Reducing the cost to creditors is a means of increasing the attorneys' customer base.  Inflating the attorney fee is a means of increasing the Reese defendants' profits.  The Complaint states a plausible and valid claim that the Reese Defendants violated the WCPA "in trade or commerce" because it alleges facts hat the Defendants determined and collected garnishment attorney fees in an amount greater than permitted by law.

Dkt. 25 at 8.

In deciding Seyfarth's motion, the Court takes the factual allegations contained in her complaint as true.  *Balistreri*, 901 F.2d at 699.  The Court concludes that Seyfarth's allegation that Defendants have a pattern and practice of inflating their attorney's fees on garnishment actions may constitute an entrepreneurial aspect of Defendants' legal practice.  Therefore, the Court denies Defendants' argument that, for purposes of the motion to dismiss, the complained of services do not constitute an entrepreneurial aspect of the practice of law.

### 2.      Statements Made in a Court Proceeding

Next, Defendants rely on a federal district court case to argue that even when taken as true, their alleged misrepresentations regarding fees were made to the state court in a court proceeding, and thus do not constitute trade or commerce under the WCPA.  Dkt. 21 at 7 (citing *Medialdea v. Law Office of Evan L. Loeffler, PLLC*, 2009 WL 1767185 (W.D. Wash.)).  In *Medialdea*, the plaintiff was a tenant who brought WCPA claims against his landlord's attorney that had represented the landlord in an unlawful detainer action against the tenant.  *Id*.  The plaintiff alleged that the attorney had misrepresented his fees and costs to the state court in the unlawful detainer proceedings.  *Id*.  The court in *Medialdea* held that

> plaintiffs make no allegation that defendant misrepresented his fees and costs to his own client; rather, they allege that his misrepresentations were to the superior court.  The Court holds that a court proceeding does not constitute "trade or commerce" under the [W]CPA.  The dearth of Washington case law on the applicability of the [W]CPA to judicial proceedings only supports this conclusion.

ORDER - 6

*Id*. Here, Defendants argue that the facts of *Medialdea* are analogous to those in the instant case and thus Seyfarth's claim under the WCPA should be dismissed.

Seyfarth alleges in her complaint that Defendants have a pattern and practice of misrepresenting fees in their process of debt collection. *See generally* Dkt. 1. Thus, taking Seyfarth's allegations as true, the Court finds the facts in the instant case to be distinguishable from those present in *Medialdea*. Here, Seyfarth is attacking the way Defendants conduct their business, not simply the way in which they handled a particular case in a court proceeding. Therefore, the Court denies Defendants' argument that, for purposes of the motion to dismiss, Defendants' acts do not constitute trade or commerce under the WCPA.

### 3.    Action Against Attorney of Seyfarth's Adversary

Defendants maintain that "[a] private cause of action under the WCPA does not lie against the attorney of a plaintiff's adversary." Dkt. 21 at 8 (citing *Jeckle v. Crotty*, 120 Wn. App. 374 (2004)). In *Jeckle*, the Washington appellate court adopted the Supreme Court of Connecticut's reasoning in similar cases in holding that, even though the plaintiff had shown that the defendant attorney's acts involved entrepreneurial aspects of the practice of law, the plaintiff failed to state a claim against the defendant under the WCPA "because allowing a plaintiff to sue his or her adversary's attorney under a consumer theory infringes on the attorney-client relationship." 120 Wn. App. at 384-85. Thus, Defendants argue that Seyfarth's WCPA claim should be dismissed because such a cause of action infringes on their attorney-client relationship.

Seyfarth argues that the holding in *Jeckle* is misguided in that the appellate court "implicitly attempted to bootstrap a consideration of the adverse parties attorney-client relationship into the [WCPA's] 'in trade or commerce' element as an exception." Dkt. 25 at 3. In addition, Seyfarth maintains that *Jeckle* is not analogous to the instant action because neither *Jeckle*, nor the Connecticut cases that the *Jeckle* court relied upon, involved attorney's fees. Dkt. 25 at 11. Moreover, Seyfarth asserts that the Washington

1    Supreme Court, in *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27 (2009),

2    rejected the petitioners' argument that an "adversarial relationship exemption to the

3    [W]CPA" exists.  Dkt. 25 at 3 (quoting *Panag*, 166 Wn.2d at 42.)  Accordingly, Seyfarth

4    maintains that the Washington Supreme Court has not created a "public policy" exception

5    to the WCPA for attorneys of a plaintiff's adversary and that this Court should not accept

6    Defendants' invitation to do so.  *Id.*

7           In *Panag*, the plaintiff was involved in a motor vehicle accident and was suing the

8    other motorists' insurance company and its collection agency.  166 Wn.2d. at 34-36.  The

9    *Panag* court rejected defendants' argument that they were immune from suit under the

10   WCPA because they were in an adversarial relationship with the plaintiff.  *Id.* at 42.

11   Defendants, in their reply, cite the *Panag* court's statement that "'this court has concluded

12   that the [W]CPA has no application to the performance of legal services.'"  Dkt. 28 at 3

13   (quoting 166 Wn.2d at 56, fn. 14).  However, after stating the proposition, the

14   Washington Supreme Court in *Panag* cites to *Short* and states that the "[W]CPA applies

15   only to entrepreneurial aspects of legal practice such [sic] setting price of legal service,

16   billing and collection, and obtaining, retaining, and dismissing clients."  166 Wn.2d at 56,

17   fn. 14.  Thus, the *Panag* court was simply restating the principle that attorneys cannot be

18   held liable, under the WCPA, for acts or services provided as part of their normal practice

19   of law.  As the Court stated above, for purposes of the motion to dismiss, the Court

20   concludes that Defendants' acts may constitute entrepreneurial aspects of the practice of

21   law.  *See supra* Section III.B.1.  Moreover, as Seyfarth is suing Defendants for an alleged

22   pattern and practice of misrepresenting its attorney's fees, the Court concludes that the

23   facts of this case are not analogous to those present in *Jeckle* and the Court is unwilling to

24   grant Defendants' motion to dismiss on the theory that Seyfarth's cause of action

25   infringes on Defendants' attorney-client privilege.

26

27

28

## IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss for failure to state a claim on which relief can be granted is **DENIED**.

DATED this 7th day of July, 2010.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 9